Note Changes Made by Court

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF EL MONTE; and THE PEOPLE OF THE STATE OF CALIFORNIA, by and through El Monte City Attorney Rick Olivarez,<br><br>Plaintiffs,<br><br>v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY; RICHARD S. SACKLER, an individual and as trustee for TRUST FOR THE BENEFIT OF MEMBERS OF THE RAYMOND SACKLER FAMILY; JONATHAN D. SACKLER, an individual and as trustee for TRUST FOR THE BENEFIT OF MEMBERS OF THE RAYMOND SACKLER FAMILY; MORTIMER D.A. SACKLER, an individual; KATHE A. SACKLER, an individual; IRENE SACKLER LEFCOURT, an individual; BEVERLY SACKLER, an individual and as trustee for TRUST FOR THE BENEFIT OF MEMBERS OF THE RAYMOND SACKLER FAMILY; THERESA SACKLER, an individual; DAVID A. SACKLER, an individual; CEPHALON, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA | Case No. 2:19-cv-03588-JFW-PLA<br><br>**STATEMENT OF DECISION** |

| | |
|---|---|
| 1 | PHARMACEUTICALS USA, INC.; JANSSEN PHARMACEUTICALS, INC.; JOHNSON & JOHNSON; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS INC.; ACTAVIS PLC; WATSON PHARMACEUTICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS PHARMA, INC.; ACTAVIS LLC; ALLERGAN PLC; ALLERGAN, INC.; ALLERGAN USA, INC.; INSYS THERAPEUTICS, INC.; MALLINCKRODT, PLC; MALLINCKRODT, LLC; CARDINAL HEALTH, INC.; AMERISOURCEBERGEN CORPORATION; MCKESSON CORPORATION; and DOES 1-100, inclusive, |
| | Defendants. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**STATEMENT OF DECISION GRANTING MOTION TO REMAND**

Plaintiffs City of El Monte and the People of the State of California's (collectively "El Monte" or "Plaintiffs") filed a Motion To Remand, seeking remand of this case pursuant to 28 U.S.C. § 1447(c) on the ground that the Court lacks subject matter jurisdiction over this action, and requested that this Court remand this matter back to the Superior Court for the State of California. Having reviewed and considered the parties' moving, opposing, and reply papers, relevant legal authority, and the record in this case, the Court makes the following findings of fact and conclusions of law, and **GRANTS** the Motion as follows:

**I. THE RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On March 28, 2019, El Monte filed its Complaint in Los Angeles County Superior Court, asserting claims against manufacturers and distributors of prescription opioids for (1) public nuisance, (2) fraud, (3) negligence, (4) unjust enrichment, (5) civil conspiracy, (6) false advertising, (7) negligent failure to warn, (8) fraudulent transfer, and (9) civil conspiracy related to the fraudulent transfer. El Monte seeks to address Defendants' alleged roles in creating, fueling, and perpetuating the ongoing opioid crisis affecting cities and counties across California, including El Monte. On its face, El Monte's Complaint asserts only state-law claims based on alleged violations of duties existing under California statutory and common law.

While the Complaint alleges the existence of a variety of federally-imposed duties, the Complaint expressly disclaims any reliance on violations of federal statutes and regulations for the elements of their causes of action: "Plaintiff does not bring causes of action based on violations of federal statutes and regulations. However, the existence of these complicated regulatory schemes shows Defendants' intimate knowledge of the dangers of diversion of prescription opioids and the existence of a thriving illicit market for these drugs. Defendants breached their duties

to Plaintiff despite this knowledge and longstanding regulatory guidance of how to deter and prevent diversion of prescription opioids." Compl. ¶ 217; *see also* ¶ 422.

On April 29, 2019, Defendant McKesson Corporation ("McKesson") removed this case to federal court under 28 U.S.C. § 1331 on the basis that El Monte's "claims present a federal question under the [Controlled Substances Act], 21 U.S.C. §§ 801, *et seq*." Doc. No. 1 ¶ 19. According to McKesson, federal jurisdiction exists because El Monte "bases the underlying theory of liability" for its state law claims "on alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, i.e., that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that defendants allegedly had a duty to identify, report, and then not ship." *Id*. ¶ 25. Thus, McKesson argues that El Monte's allegations satisfy the narrow exception to the well-pleaded complaint rule established by the Supreme Court in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg.*, 545 U.S. 308 (2005), asserting they necessarily raise a substantial, disputed federal issue and the exercise of federal jurisdiction over this case would not disrupt the federal-state balance approved by Congress.

On May 24, 2019, El Monte filed this Motion seeking remand to the Superior Court. As noted in El Monte's Motion, at least twelve other district courts decisions have granted remand when faced with issues involving state law claims arising out of the opioid epidemic that are substantively similar to those raised by El Monte's Motion. Mot. at 3:2-3-4:3 n.2.[1] At the same time, McKesson has been unable to

---

[1] *See* Order, *City of Boston, et al. v. Purdue Pharma L.P., et al.*, No. 1:18-cv-12174, Doc. 32 (D. Mass. Jan. 29, 2019) (remand granted after Distributor Defendant AmerisourceBergen filed notice of removal based on *Grable* jurisdiction under CSA) (Plaintiffs' Request for Judicial Notice ("RJN"), Ex. B); *Tucson Med. Ctr. v. Purdue Pharma LP*, 2018 U.S. Dist. LEXIS 213616, at *10 (D. Ariz. Dec. 18, 2018) same); *Worcester v. Purdue Pharma Ltd. P'ship*, 2018 U.S. Dist. LEXIS 215824, at *9-10 n.2 (D. Mass. Nov. 21, 2018) (same); *City of Reno v. Purdue Pharma, L.P.*, 2018 U.S. Dist. LEXIS 187821, at *8-11 (D. Nev. Nov. 2, 2018) (remand granted after McKesson filed notice of removal based on *Grable* jurisdiction under CSA); Order, *County of Anderson v. Rite Aid of South Carolina,*

identify any district court decisions denying a motion for remand in an opioid case involving state law claims where removal was based on *Grable*.

## II. THE JURISDICTIONAL STANDARD ON REMOVAL AND REMAND

An action may be removed to federal district court only where the federal court would have had original jurisdiction over the claim in the first instance. *See* 28 U.S.C. § 1441(a). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute…." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, there is a "strong presumption against removal jurisdiction" when evaluating a motion to remand, under which a court "strictly" construes the removal statute, "and reject[s] federal jurisdiction 'if there is any doubt as to the right of removal in the first instance.'" *GranCare, LLC v. Thrower*, 889 F.3d 543, 550 (9th Cir. 2018) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). "The burden of establishing federal jurisdiction is upon the party seeking removal." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988); *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018).

A district court has federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'aris[es] under' federal law … if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily

---

*Inc.*, No. 8:18-cv-01947, Doc. 44 (D.S.C. Aug. 20, 2018) (remand granted after McKesson filed supplemental notice of removal based on *Grable* jurisdiction under CSA) (RJN, Ex. A); *Weber Cty. v. Purdue Pharma, L.P.*, 2018 U.S. Dist. LEXIS 133312, at *14-24 (D. Utah Aug. 7, 2018) (remand granted after McKesson filed notice of removal based on *Grable* jurisdiction under CSA); *Uintah Cty. v. Purdue Pharma, L.P.*, 2018 U.S. Dist. LEXIS 133310, at *15-24 (D. Utah Aug. 7, 2018) (same); *City of Granite City v. Amerisourcebergen Drug Corp.*, 2018 U.S. Dist. LEXIS 117152, at *5-6 (S.D. Ill. July 13, 2018) (same); *N.M. ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1251-53 (D.N.M. June 12, 2018) (same); *Del. ex rel. Denn v. Purdue Pharma L.P.*, 2018 U.S. Dist. LEXIS 69406, at *7-15 (D. Del. Apr. 25, 2018) (same); Memorandum Opinion and Order, *State of West Virginia, et al. v. McKesson Corp.*, No. 2:17-cv-03555, Doc. 21 (S.D.W. Va. Feb. 15, 2018) (same) (RJN, Ex. C); *W. Va. ex rel. Morrisey v. McKesson Corp.*, 2017 U.S. Dist. LEXIS 9352, at *18-25 (S.D.W. Va. Jan. 24, 2017) (same).

- 3 -

depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 690 (2006) (internal quotations omitted).

Even if no express federal claims are asserted, a substantial federal question warranting federal jurisdiction may still exist where: (1) a state law claim necessarily raises a federal issue; (2) that is actually disputed; (3) substantial; and (4) capable of resolution through the exercise of federal jurisdiction without disturbing "any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 313; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013). This category of cases is slim, and *Grable* jurisdiction is far from the norm. *See Empire Healthchoice*, 547 U.S. at 701. If all four requirements are not satisfied, then federal jurisdiction under *Grable*'s narrow exception to the well-pleaded complaint rule does not exist. *See Hornish v. King County*, 899 F.3d 680, 688 (9th Cir. 2018).

### III. DISCUSSION

The Court need not address whether any purported federal issue "is actually disputed" because none was raised by El Monte's Complaint or its Motion.

#### A. Whether a Federal Issue Is Necessarily Raised

For a federal issue to be "necessarily raised" it must be pivotal to the state law claims. *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012); *Vieira v. Mentor Worldwide, LLC*, 2018 U.S. Dist. LEXIS 153205, at *11 (C.D. Cal. Sep. 7, 2018) (finding federal issue is "necessarily raised" when the resolution of state law claims depend on a question of federal law is necessary or essential to adjudication of a plaintiff's claims). If, however, a claim is supported by at least one alternative and independent theory that arises under state law, "'federal question jurisdiction does not attach because federal law is not a necessary element of the claim.'" *Nevada*, 672 F.3d at 675 (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)).[2]

---

[2] "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal

- 4 -

Here, the Complaint alleges exclusively state law claims. While the Complaint references duties imposed by the CSA and its implementing regulations, El Monte disclaims any reliance on violations of federal law for the elements of its causes of action. Thus, instead of raising any necessary federal question, El Monte's references to federal requirements and agency action show the Distributor Defendants' willful misconduct despite repeated reprimands from federal authorities, which provide key background information in support of El Monte's punitive damages claim. *See*, *e.g.*, *Balderas*, 323 F. Supp. 3d at 1251 (finding plaintiffs cited DEA letters "to show that the DEA reminded and warned the Distributor Defendants of their statutory duties").

More importantly, however, each of El Monte's claims may be resolved based on alleged violations of California statutory and common law alone. Thus, binding Ninth Circuit authority requires a finding that a federal issue is not necessarily raised. *See Nevada*, 672 F.3d at 675. For example, separate and apart from the CSA and its implementing regulations, El Monte alleged that McKesson and other "Distributor Defendants" possessed duties under California law "to exercise reasonable care in the sale and distribution of opioids in and around Plaintiff's boundaries" and "to develop and maintain a system to track suspicious orders of prescription opioids." Compl. ¶¶ 209-210. As part of the Distributor Defendants' duty to exercise reasonable care, El Monte alleges that they had an obligation "to prevent diversion of prescription opioids" and "report and halt suspicious orders" of prescription opioids. Compl. ¶ 209.

McKesson argues that there is no independent duty to halt suspicious orders under California law, and that such a duty "arises, if at all, out of the federal CSA and its implementing regulations." Opp'n at 3:24-4:3. While the existence of a duty under California law to halt suspicious orders is not currently before the Court,[3]

---

question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains*, 80 F.3d at 346.
[3] The validity of the alleged independent California statutory and common law duties imposed on the Distributor Defendants are not an issue properly before the

- 5 -

§ 1714(a) of the California Civil Code expressly provides that "everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person…." *Id*.; *see also Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 837 (2019) (finding existence "common law legal duty of care is a question of policy that, depending upon the context, may turn on a court's consideration of a variety of factors.").

Thus, the Distributor Defendants had a duty to use ordinary care and are liable for injuries caused by their failure to exercise ordinary care under the circumstances, and El Monte has expressly alleged that the Distributor Defendants' duty of ordinary care includes a duty to halt shipments of suspicious orders. *See Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011). Since El Monte may prevail by demonstrating a violation of the alleged common law duty to halt suspicious orders, no federal issue is necessarily raised. *See Nevada*, 672 F.3d at 675.

For much the same reason, El Monte's negligence and civil conspiracy claims do not require El Monte to show that the DEA's aggregate production quotas for prescription opioids were unreasonable. Again, El Monte has alleged a variety of duties imposed by California statute and common law, including the duty to track, report, and halt suspicious shipments orders of prescription opioids, that would include a duty to avoid excessive shipments of prescription opioids to El Monte. *See* Compl. ¶¶ 209-210. This is sufficient to find that El Monte's claims do not necessarily raise a federal issue. *See Nevada*, 672 F.3d at 675. Federal question jurisdiction does not exist where a defendant (McKesson) merely anticipates defending its conduct by showing its conduct complied with the DEA's aggregate quotas. *See Border Infrastructure Envtl. Litig. v. U.S. Dep't of Homeland Sec.*, 915

---

Court on El Monte's Motion. *See Weber Cty.*, 2018 U.S. Dist. LEXIS 133312, at *14-24 ("Plaintiffs are the masters of their claims—whether eventually successful on the merits or not."); *Uintah Cty.*, 2018 U.S. Dist. LEXIS 133310, at *15 (same).

1  F.3d 1213, 1221-22 (9th Cir. 2019) (finding case does not arise under federal law
2  because defendant intends to invoke a federal defense).

3        Finally, other district courts faced with substantively similar issues involving
4  state law claims arising out of the opioid epidemic found that cities and counties like
5  El Monte did not necessarily raise a federal issue where they alleged Distributor
6  Defendants acted unreasonably by violating duties imposed solely under state
7  common law. *See Worcester*, 2018 U.S. Dist. LEXIS 215824, at *9-10 n.2 (resolution
8  of federal issue not necessary because "Defendants concurrently had a common law
9  duty to exercise reasonable care when distributing the drugs"); *see also City of Reno*,
10 2018 U.S. Dist. LEXIS 187821, at *6 (finding federal issue not necessarily raised
11 because "Reno could succeed on this claim by showing that Defendants breached a
12 general duty of reasonable care as opposed to the specific duties imposed by either
13 the CSA or NAC § 453.400").[4]

### B.    Whether Any Federal Issue Raised Is "Substantial"

15       To determine whether state law claims are sufficiently substantial to invoke
16 federal jurisdiction, courts consider whether (a) federal law provides for a private
17 cause of action, (b) determination of the federal issues are important to the federal
18 system as a whole, (c) state court adjudication would undermine the uniform
19 development of federal law, and (d) the case presents numerous fact-specific issues.
20 *See Gunn*, 568 U.S. at 261; *Grable*, 545 U.S. at 318, *Empire Healthchoice*, 547 U.S.
21 at 700; *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 279 (9th Cir. 2018).

22       Thus, any purported federal issue raised by El Monte's state law claims is not

---

[4] *See also Balderas*, 323 F. Supp. 3d at 1251-52 ("Whatever putative duty exists under the DEA letters, McKesson has not shown that Plaintiff's claims are predicated solely on obligations under federal law because the Complaint identifies other duties implicated by state law."); *County of Anderson*, (RJN, Ex. A at 17-18) (agreeing with plaintiff that "each of the counts in the Complaint asserts numerous bases for Defendants' violation of state law and liability to Plaintiff" including, alternative and independent state law sources); *City of Boston*, (RJN, Ex. B at 2) (finding Distributor Defendants concurrently possessed common law duty to exercise reasonable care when distributing drugs).

sufficiently substantial to confer federal jurisdiction. Not only does the CSA not provide for a private right of action, but determination of Defendants' liability to El Monte and its residents necessarily will be "fraught with 'fact-bound and situation-specific' inquiries" regarding Defendants' compliance with numerous duties imposed under California law. *See Empire Healthchoice*, at 700. By comparison, "*Grable* presented a nearly pure issue of law, the resolution of which would establish a rule applicable to numerous tax sale cases." *Id*. Even if adjudication of a purported federal issue is substantial to some party in this suit, it would not affect the federal system as a whole. *See, e.g.*, *Balderas*, 323 F. Supp. 3d at 1252 ("Even if there was a violation of the FCSA, its promulgated rules, and the DEA's interpretation of the statute, no large-scale federal interests of the kind in *Grable* – the tax code – are implicated by such a violation.").[5] Thus, allowing a state court to resolve issues raised by El Monte's state law claims will not undermine the development of uniform federal regulation of controlled substances. *See Gunn*, 568 U.S. at 261-62.

### C. Whether Adjudication of El Monte's State Law Claims in Federal Court Would Disrupt the Federal-State Balance

Finally, the Court must determine whether federal courts may resolve the issues raised in El Monte's Complaint "without disturbing any congressionally-approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The Court agrees with other district courts that have analyzed substantively similar state law claims and finds exercising federal jurisdiction over the state law claims here would disrupt the federal-state balance approved by Congress.[6]

---

[5] Other district courts addressing the same issues have reached the same conclusion. *See County of Anderson*, (RJN, Ex. A at 18-20); *Reno*, 2018 U.S. Dist. LEXIS 1878, at *8-9; *Weber Cty.*, 2018 U.S. Dist. LEXIS 133312, at *18-21; *Granite City*, 2018 U.S. Dist. LEXIS 117152, at *5; 2018 U.S. Dist. LEXIS 69406, at *11-12; *Uintah Cty.*, 2018 U.S. Dist. LEXIS 133310, at *17-18; *State of West Virginia*, (RJN, Ex. C at 13-14).

[6] *See also County of Anderson* (RJN, Ex. A at 20-21); *State of West Virginia* (RJN, Ex. C at 14-15); *Balderas*, 323 F. Supp. 3d at 1252-53; *Denn*, 2018 U.S. Dist. LEXIS 69406, at *14-15; *Reno*, 2018 U.S. Dist. LEXIS 187821, at *10-11; *Weber Cty.*, 2018 U.S. Dist. LEXIS 133312, at *21-24; *Uintah Cty.*, 2018 U.S. Dist.

In addition to the absence of a private right of action under the CSA, El Monte asserts "garden variety" state law contract and tort claims; allowing federal jurisdiction over these claims could flood federal courts with state law claims. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 827-28 (1986); *Grable,* 545 U.S. at 318-19 ("For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases."). Along with the States, cities and counties like El Monte have a strong interest in ensuring highly addictive prescription opioids are not marketed or distributed to their residents negligently or fraudulently. Congress likely did not intend for federal courts to have subject matter jurisdiction over such garden-variety state law tort claims. *See*, *e.g., Reno*, 2018 U.S. Dist. LEXIS 187821, at *10.

## IV.  CONCLUSION

For the foregoing reasons, El Monte's Motion to Remand is **GRANTED**.

**IT IS SO ORDERED.**

DATED:  _June 18, 2019

Hon. John F. Walter
United States District Judge

LEXIS 133310, at *21-24; *Granite City*, 2018 U.S. Dist. LEXIS 117152, at *5.